IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAM COHEN, by his next friend SIDNEY COHEN, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>JEFFREY MILLER, individually and as Director of the Illinois Department of Public Aid; PETER BLOOMBERG, individually and as Administrator of the Medical Assistance Program, Illinois Department of Public Aid; the ILLINOIS DEPARTMENT OF PUBLIC AID,<br><br>        Defendants. | No. 79 C 2447 |

## MOTION TO ENFORCE CONSENT DECREE

The Consent Decree at issue requires Defendants to send a notice to anyone who has applied for Medicaid, and whose eligibility has not been determined within federally-established time limits due to Defendants' delay, advising the individual that he or she is entitled to receive benefits provided under the Medicaid program pending an eligibility determination.[1] (Ex. A hereto.) Defendants must send that notice within eight days after the federally-established time limit for determining the eligibility has passed. The Consent Decree also requires Defendants to provide temporary benefits to any applicant who requests them. Despite the fact that Defendants are—and have been for years—woefully untimely in determining Medicaid applications, on

---

[1] This Motion relates to the Consent Decree entered to resolve Count I of *Cohen v. Miller*, which involves the notices identified as Form HFS 2350, *see* http://www.dhs.state.il.us/page.aspx?item=85473 (last visited May 15, 2018). Count II of *Cohen* relates to reimbursement notices. The reimbursement notices are not at issue in this Motion, although Plaintiffs explicitly reserve all rights to seek compliance as to those notices in the future. Additionally, although the Consent Decree contains requirements for Defendants other than those identified herein, this Motion seeks relief only as to those requirements identified herein. Plaintiffs reserve their rights as to the other requirements of the Consent Decree not identified in this Motion.

information and belief, Defendants have not provided temporary benefits to a single applicant since June 2016. The reason for this statistic is evident: Defendants have failed to systematically send the notices required under the Consent Decree, which inform applicants they are entitled to temporary benefits upon their request.

As a result of Defendants' non-compliance with federal regulations and the Consent Decree, Plaintiffs, who number in the thousands of individuals, are suffering irreparable harm because they do not have access to the health coverage to which they are entitled by law. Plaintiffs are faced with choosing between paying for medical care or other necessary life expenses, which is *per se* irreparable harm.

In order to provide relief from Defendants' violations and to prevent further irreparable harm, Plaintiffs respectfully move to enforce the Consent Decree entered in this case.[2] Attempts by counsel to persuade the State to resolve this matter without this Court's intervention have been unsuccessful to date. In support of this motion, Plaintiffs state:

## BACKGROUND AND CASE HISTORY

1. Medicaid is a joint federal-state program that provides medical assistance based on a means test. Under Medicaid, the federal government provides funds to states, which in turn contribute their own funds and administer the Medicaid program within their respective borders.

---

[2] This case is not currently on the docket of an active judge. The last active judge assigned to the case was Judge James F. Holderman. With regard to reassignment, Plaintiffs note that the plaintiff class in this case overlaps with two other certified classes in active cases in the Northern District of Illinois. Before Judge Lefkow is *Beeks, et al v. Bradley, et al*, 92 C 4204, and its related case, *Memisovski, et al v. Maram*, et al, 92 C 1982. The class in *Beeks* includes the *Cohen* class, as it comprises all persons in Illinois who are or will be certified as eligible for benefits under the Medicaid program. *See* Ex. A to Motion for Enforcement of Consent Decree, 92 C 4204, Doc. 38-1, Page ID 11. Also, Judge Gottschall certified a class in *Koss, et al v. Norwood, et al*, 17 C 2762, which covers a subset of the *Cohen* class, namely, applicants for long-term care Medicaid benefits in Illinois who have not timely received an eligibility determination. *See Koss v. Norwood*, March 29, 2018 Memorandum Opinion and Order, 17 C 2762, Doc. 56, Page ID 476.

To participate in Medicaid, a state must comply with federal statutes and regulations that govern the program. *Bertrand v. Maram*, No. 05-cv-0544, 2006 WL 2735494, at *1 (N.D. Ill. Sept. 25, 2006). Illinois participates in Medicaid and thus must comply with the federal laws governing Medicaid.

2. To receive Medicaid benefits, an individual must submit an application and be deemed eligible for benefits, a determination that is made by the state agencies charged with administering the Medicaid program. In Illinois, the Department of Healthcare and Family Services ("HFS") administers Medicaid, and with the Department of Human Services ("DHS") determines whether an applicant is eligible for Medicaid benefits.[3]

3. The Medicaid statute requires that a state must determine eligibility for an applicant "with reasonable promptness." 42 U.S.C. § 1396a(a)(8). According to the applicable federal regulations, "reasonable promptness" means no longer than ninety (90) days for applicants who apply for Medicaid based on disability,[4] and forty-five (45) days for all other applicants. 42 C.F.R. § 435.912. The time for a determination begins to run when the application is completed.

4. This action was filed in 1979 seeking to enforce these federally-established time limits because, at the time, they were not being met.

---

[3] DHS is the successor agency to the Illinois Department of Public Aid ("IPDA"). 20 ILCS 1305/80-15(b). Felicia Norwood is the Director of the Illinois HFS, which is the single state agency for Illinois that is responsible for the oversight and administration of the Medicaid program. Norwood is responsible for ensuring that Illinois's Medicaid programs comply with federal law. James Dimas is the Secretary of the Illinois DHS, which accepts and processes applications for Medicaid enrollment on behalf of the State of Illinois under an intergovernmental agreement with HFS. Dimas is responsible for ensuring that DHS conducts Medicaid eligibility determination in accordance with policies and procedures established by HFS. Norwood and Dimas are sued in their official capacities.

[4] When this action was filed in 1979, the time limit was sixty (60) days.

5.      On July 10, 1979, *nunc pro tunc* to July 5, 1979, this Court entered an order requiring Defendants to process applications within federally-established time limits. (Ex. B hereto.) Thereafter, this Court entered the Consent Decree establishing by consent of the parties and court order certain procedures Defendants must follow, which are described more fully below. (Ex. A.)[5] Although it has been many years since it was entered, Plaintiffs are not aware of any action by this Court that changes the full force and effect of the Consent Decree.

6.      Among the procedures the Consent Decree established was for Defendants to send reports to Plaintiffs' counsel identifying various statistics about the number of Medicaid applications that had or had not been decided within federally-established time limits ("Cohen Reports"). The Cohen Reports allowed Plaintiffs' counsel to monitor Defendants' compliance with the Consent Decree. For decades, Defendants issued the Cohen Reports. As of October 2017, Defendants have stopped issuing the Cohen Reports.

7.      However, the State cannot dispute that the significant delays in application processing continue today. Eligibility determinations have been delayed for months past the federally-established time limits, causing significant harm. (*See* Exs. D-F.) Thus, the same widespread, lengthy delays in processing Medicaid applications that resulted in the Consent Decree still exist today.

### THE TERMS OF THE CONSENT DECREE

8.      The Consent Decree establishes a process to track the State's delays in processing applications for Medical Assistance No Grant (MANG), which is generally known as Medicaid,[6]

---

[5] The Consent Decree attached as Exhibit A was sent to Plaintiffs' counsel on February 15, 2018 in response to a request to the DHS for public records pursuant to the Freedom of Information Act (FOIA). (*See* Ex. C hereto.)

[6] The Consent Decree refers to "MANG," which is a Medicaid category. DHS provides that "MANG is the acronym for Medical Assistance No Grant. Persons who receive MANG benefits get help with allowable medical needs, but do not receive cash benefits. The person may, or may not, also receive SNAP [Supplemental Nutrition Assistance Program]." *See* http://www.dhs.state.il.us/page.aspx?item=19667 (last visited May 15, 2018). Although

4

and mandates temporary relief for individuals who have submitted applications for these Medicaid benefits but whose applications have not been decided by DHS within the federally-established time limits.[7]

9. The Consent Decree requires Defendants to provide Plaintiffs' attorneys with Cohen Reports identifying, among other things, (i) the number of Medicaid *disabled* applications pending over seventy-five (75) days and how many of those were delayed because of DHS (Ex. A, ¶ 2d); (ii) the number of Medicaid *non-disabled* applications pending over sixty (60) days and how many of those were delayed by DHS (*id.* ¶ 2(e)); and (iii) the number of persons who received medical assistance pending a decision on their applications, as described in paragraph 10 below (*id.* ¶ 2(i)). Defendants agreed to issue the Cohen Reports "until the Court enters an order to the contrary." (*Id.* ¶ 2.)

10. The Consent Decree further requires Defendants to send a notice directly to any individual whose application has not been determined within the federally-mandated time period. The notice informs the applicant that he or she is entitled to receive a document that authorizes the applicant to receive the full range of benefits provided under the Medicaid program pending the eligibility determination (the "Notice"). (Ex. A, ¶ 4.) But to obtain that document authorizing Medicaid benefits (the "Temporary Card"), the applicant must affirmatively request it by following the procedure set forth in the Notice. (*Id.*) The Consent Decree requires that applicants "who request such a document *must be provided one*." (*Id.* ¶ 4(b) (emphasis added).)

11. More specifically, the Consent Decree requires, *inter alia*, Defendants to:

---

there are now more categories of individuals who, although not receiving a cash benefit, are potentially eligible for Medicaid, the concept remains the same. Individuals who apply for Medicaid eligibility or Medicaid eligibility and SNAP, but not cash benefits, potentially qualify for MANG.

[7] The Consent Decree uses "IDPA" to refer to the relevant agency. IDPA has been renamed DHS. *Supra* n.3. For convenience, this Motion uses DHS to refer to the relevant agency.

- "[P]rovide to all persons whose applications for MANG are pending at least fifteen [15] days over federally established time limits due to IDPA delay . . . a document which entitled them to receive the full range of benefits provided by the MANG program during the remaining period during which their applications are pending" (the "Temporary Card"), upon an applicant's request for a Temporary Card. (Ex. A, ¶ 4.)

- "Not less than seven [7] days before an applicant is entitled to receive a [Temporary Card], defendants will inform the applicant of the right to receive the [Temporary Card] and the procedure required to obtain it." (*Id.* ¶ 4(b).)

12. The Consent Decree defines the term "federally-established time limits" as

> 45 days from the date of the filing of a Medicaid application by aged and blind persons and families with dependent children, and 60 days from the date of filing of an application by disabled persons; provided, however, that if subsequent federal statutes or regulations change such times standards, this definition will be modified consistently with such changes.

(*Id.* ¶ 1(d).)[8]

13. DHS incorporated the procedure set forth in the Consent Decree into its internal policy manual. (*See* Ex. G hereto, Policy Manual at 17-03-03, *available at* http://www.dhs.state.il.us/page.aspx?Item=16953 (last visited May 15, 2018)); *see also* WAG 25-13-00 IES Forms (describing the "trigger" for Form HFS 2350 as "Cohen schedule requires letter to be sent to applicant by 54th or 69th day. (FHP/ACA/Aged/Blind or Disability app respectively). By day 44 or day 59, determine if delay is caused by department"), *available at* http://www.dhs.state.il.us/page.aspx?item=85473 (last visited May 15, 2018).

---

[8] Since the Consent Decree was entered, the federally-established time limit for applications made on the basis of disability has changed from 60 days to 90 days. *See* 42 C.F.R. 435.912(c)(3)(i). The 45-day time limit for all other applications has not changed. *Id.* § 435.912(c)(3)(ii). State law continues to require applications made on the basis of disability have eligibility determined within 60 days. 89 Ill. Adm. Code § 110.20(b)(2). In the Cohen Reports, Defendants have reported on their compliance with the 60-day state deadline for applications made on the basis of disability.

## DEFENDANTS' VIOLATIONS OF THE CONSENT DECREE

14. Defendants are not complying with the federally-established time limits for determining an applicant's eligibility for Medicaid. According to the Cohen Reports, the average number of monthly applications for which eligibility determinations were untimely during the year 2017 was more than 10,000. Attached hereto as Exhibit H are the Cohen Reports available to Plaintiffs' counsel for June 2016 to the present, the data from which Plaintiffs' counsel has summarized in Exhibit I hereto. According to the most recent Cohen Reports available (the last report was for September 2017), in the sixteen (16) month period from June 2016 through and including September 2017, the Medicaid applications of 76,948 Illinois residents were processed untimely. As the Cohen Reports acknowledge, these delays are overwhelmingly attributable to the State—not to the applicants. On average since June 2016, DHS has admitted that it is responsible for the delay more than 98% of the time. (Ex. I at 3.)

15. As a result of Defendants' failure to provide the mandated Cohen Reports, Plaintiffs' counsel is unable to directly monitor Defendants' compliance with the federally-established time limits. However, hundreds of clients, providers, and various organizations that work with Medicaid applicants confirm that the State's delays persist through the present day.

16. Despite these delays, Defendants are violating the Consent Decree's requirements that they issue Notices and provide Temporary Cards to those who request them. From June 2016 through September 2017, the Cohen Reports show that *no applicant* received a Temporary Card. (Ex. I.) On information and belief, Defendants' failure to issue Temporary Cards continues to present day.

17. Defendants have also failed to issue systematically Notices informing applicants that they may request, and will receive, a Temporary Card authorizing them to receive benefits

pending a decision on their applications. As described above, an applicant whose eligibility determination is delayed more than fifteen days over the federally-established time limit is entitled to receive a Temporary Card as a matter of right—but only upon an applicant's request. Because of the State's failure to issue Notices, the vast majority of applicants whose applications are delayed have no way to know they are entitled to benefits pending decisions on their applications. Therefore, they cannot request those benefits, which the Consent Decree requires for the State to provide them.

18. Defendants' failure to provide applicants with access to or information about the availability of a Temporary Card has caused, and continues to cause, thousands of eligible Illinois residents to be denied access to Medicaid benefits while their applications languish. As a result of the State's delinquency, individuals who are eligible for Medicaid cannot access their benefits, and therefore cannot access critically important health coverage.

19. Although enforcement of the Consent Decree should require no evidence other than evidence of non-compliance, Plaintiffs have provided the Court with specific instances of the consequences of Defendants' violations. For example, a patient advocate who assists individuals statewide in applying for Medicaid reports that individuals with whom she works have been waiting "inordinately long times," well in excess of the federally-imposed time limit, to receive any action on their Medicaid applications. (Ex. D, ¶¶ 1-4.) As a result of the State's delays in processing Medicaid applications, her clients are unable to obtain medical care and treatment. (*Id.* ¶ 7.) Among the clients who cannot obtain medical care and treatment are children with seizure disorders, who cannot obtain prescription medications to treat their disorder; individuals with behavior health needs, who are unable to receive outpatient treatment and thus must incur uncovered inpatient hospitalizations; and individuals who have been

approved for Home and Community-Based Waivers (which allows in-home or in-community long-term treatment), who cannot receive that active treatment and are instead institutionalized. (*Id.* ¶ 8.) None of the individuals with whom the provider works has been notified that he or she may be eligible for a Temporary Card. (*Id.* ¶ 11.)

20. Another patient advocate, who regularly assists clients in Chicago with applications for Medicaid, reports that one of her young clients applied for Medicaid on October 2, 2017 and only received a determination of her eligibility in March 2018—more than five months later—due to the efforts of her health care provider. (Ex. E, ¶¶ 2-3, 5, 10.) After applying for Medicaid, but before the State acted on her application, the client experienced suicidal ideation, but refused to seek the medical treatment she knew she needed because she lacked healthcare coverage. (*Id.* ¶¶ 5-6.) Although the State was far overdue on her eligibility determination, the client was not offered, and never received, documents entitling her to Medicaid benefits pending the eligibility determination. (*Id.* ¶ 27.) Thus, as a direct result of the State's delays in processing Medicaid applications, the young woman could not get the medical care she desperately needed. At her eligibility hearing, which occurred on March 8, 2018, the hearing officer reported that, at that time, FCRC [a DHS center] was still processing Medicaid applications that had been submitted in September 2017—well beyond the federally-imposed time limits for processing applications. (*Id.* ¶ 10.)

21. A case manager for older adults reports that vulnerable seniors are also suffering while their Medicaid applications are pending. (Ex. F.) Seniors who do not have other insurance coverage are afraid to go to the doctor, are not able to purchase their prescription drugs, and are resorting to wearing their incontinence supplies longer than they should because they cannot afford them without Medicaid coverage. (*Id.* ¶¶ 14-16.)

22. The applicants described above are just a small sample of the substantial harm the State's delays and violations of the Consent Decree are causing.

23. During the past two months, Plaintiffs' counsel has referred to the State hundreds of individual applicants who have been waiting longer than 45 days for their eligibility to be determined, and are unable to receive necessary medical care as a result. These individuals include, for example, pregnant women who need prenatal care; newborns who need well-child visits and immunizations; adults with significant physical and mental health care issues who need maintenance medications; and individuals who have been hospitalized and need health services and durable medical equipment in order to be released to their home.[9]

24. This Court has authority to enforce the Consent Decree. "[F]ederal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004); *see also Jones-El v. Berge*, 374 F.3d 541, 545 (7th Cir. 2004) ("So long as the underlying consent decree remains valid . . . the district court must be able to enforce it.").

25. Moreover, the Final Judgment Pursuant to Fed. R. Civ. P. 54, entered in this matter on March 28, 1997, references this Consent Order (Ex. J, ¶ D. 1) and notes that the Court retains jurisdiction for all purposes (*id.* ¶ H).

26. Pursuant to its authority, this Court should enter an order requiring that Defendants comply with the Consent Decree by issuing Notices directly to applicants on the

---

[9] Applicants referred to Plaintiffs' counsel from area physicians, clinics and hospitals include newborns who have been born between November 2017 and February 2018, and have not been added to their mother's Medicaid case and therefore are not yet eligible for health care coverage. The failure to approve infants' Medicaid benefits is particularly shocking because not only is newborn care essential, but eligibility for Medicaid benefits for infants whose parents are receiving Medicaid benefits does not require any further evidence of eligibility. On information and belief, newborns are missing necessary well-child and immunizations required by Early Periodic Screening Diagnosis and Treatment (EPSDT), 42 USC § 1396d(r)(5), due to their inability to secure Medicaid coverage.

eighth day after the expiration of the federally-established time limit for determining the eligibility application. The Notices should inform the applicant of his or her entitlement to a Temporary Card upon request. The order should further require that Defendants provide Plaintiffs' counsel with monthly reports identifying the number of Notices that Defendants have issued so that Plaintiffs can ensure Defendants have an effective and efficient system for issuing the Notices. Finally, the order should require that Defendants comply with the Consent Decree by issuing Temporary Cards upon an applicant's request, and by issuing Cohen Reports to ensure Defendants are enabling eligible applicants who are entitled to Medicaid benefits pending a decision on their application to receive those benefits.

27. Plaintiffs submit herewith a proposed order restating the requirements of the Consent Decree as they relate to this Motion, and providing for enforcement of the Consent Decree as requested herein.

WHEREFORE, Plaintiffs respectfully request that this Court:

a) Enforce the Consent Decree by directing Defendants to issue, within eight days after the expiration of the federally-imposed time limit for an individual's Medicaid application, a direct notice to that individual informing that individual that she or he is entitled to the full range of benefits provided under the Medicaid program pending a decision on the application;

b) Direct Defendants to issue monthly reports identifying the number of Notices Defendants have issued;

c) Enforce the Consent Decree by directing Defendants to, upon an applicant's request, issue documents entitling an individual whose Medicaid application is past the federally-imposed timeline by fifteen days or more to the full range of benefits provided under the Medicaid program;

d) Enforce the Consent Decree by directing Defendants to issue Cohen Reports;

e) Award Plaintiffs the costs of their action and reasonable attorneys' fees; and

f) Order any and all further appropriate relief.

11

                                        Respectfully submitted,

                                        /s/Thomas Yates
                                        One of Plaintiffs' Attorneys

Dated: May 16, 2018

Thomas Yates
Caroline Chapman
Meghan P. Carter
Legal Council for Health Justice
17 N. State, Suite 900
Chicago, IL 60602
(312) 605-1958
tyates@legalcouncil.org
cchapman@legalcouncil.org
mcarter@legalcouncil.org

Stephanie Altman
Kate Walz
Kevin Herrera (*Pro Hac Vice* Admission Pending)
Sargent Shriver National Center on Poverty Law
67 E. Madison, Suite 2000
Chicago, IL 60603
(312) 789-4105
stephaniealtman@povertylaw.org
katewalz@povertylaw.org
kevinherrera@povertylaw.org

Eugene A. Schoon
Kelly J. Huggins
Ashley K. Martin
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
eschoon@sidley.com
khuggins@sidley.com
amartin@sidley.com

Attorneys for Plaintiffs